DA 09-0234

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 435N

STATE OF MONTANA,

      Plaintiff and Appellee,

v.

SHERRI DOYLE,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
In and For the County of Big Horn, Cause No. DC 2008-030
Honorable Blair Jones, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Randen Schoppe, Vogel and Wald, PLLC, Hardin, Montana

      For Appellee:

          Hon. Steve Bullock, Montana Attorney General, C. Mark Fowler,
Assistant Attorney General, Helena, Montana

          Georgette Lynn Hogan, Big Horn County Attorney, David Sibley, Deputy
County Attorney, Hardin, Montana

Submitted on Briefs:  October 14, 2009

Decided:  December 22, 2009

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2006, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Sherri Doyle (Doyle) was charged by Information with the offense of Driving, or Being in Actual Physical Control of, a Motor Vehicle While Under the Influence of Alcohol or Drugs (DUI). She contends that the Montana Highway Patrol officer did not have the requisite particularized suspicion to conduct an investigative stop. She moved to suppress evidence of the DUI obtained during the stop and to dismiss. The District Court denied the motion. Doyle appeals. We affirm.

¶3     The dispositive issue on appeal is whether the District Court erred by denying Doyle's motion to suppress.

¶4     On the evening of March 8, 2008, at around 6:45 p.m., Highway Patrolman Winburn was traveling westbound on Interstate 90 from Hardin to Billings. He noticed a car parked on the side of the highway in a somewhat remote location. As he approached the vehicle from behind to determine if the car was abandoned, Winburn saw a man, who appeared disoriented or confused, walking behind the car. The officer also noticed another person sitting in the passenger seat of the parked vehicle. Winburn activated his vehicle's overhead lights, got out of his car and shined a bright light on the man. The

2

man, who was leaning inside the driver's side of the car by that time, did not react to the officer or the light.

¶5     Winburn approached the man who later identified himself as Ronald Browning and asked Browning if everything was all right. Browning said they were on their way to Billings and were changing drivers. Winburn smelled alcohol on Browning's breath and asked if Browning had been drinking. Browning said that he had. Winburn asked if the passenger had also been drinking. Browning replied that she had as well. Winburn approached the passenger, who was identified as Sherri Doyle, and confirmed that she had driven from Hardin but wanted Browning to drive so they pulled over to change drivers. Doyle said she had been drinking but had stopped approximately 3 hours earlier. Winburn testified that Doyle had bloodshot eyes, slurred speech and smelled of alcohol.

¶6     Winburn attempted to conduct field sobriety tests on Doyle but was able to conduct only a horizontal gaze nystagmus (HGN) test. Winburn's breathalyzer was not functioning properly and Doyle had an injured leg and could not perform the other typical field tests. Winburn transported both Browning and Doyle to the Sheriff's Office in Hardin where Browning was released and Doyle submitted a breath sample of 0.194. She was arrested for DUI, 4th or subsequent offense.

¶7     The court appointed counsel for Doyle, who, on June 3, filed a Motion to Dismiss, arguing that Winburn did not have the requisite particularized suspicion to make an investigative stop of Doyle and Browning; therefore, any evidence Winburn obtained pertaining to a DUI should be suppressed and the case should be dismissed.

3

¶8     The State responded that Winburn's stop was not an investigative stop requiring particularized suspicion; rather it was a "welfare check"—a stop to determine whether assistance or aid was needed.  The State asserts that welfare stops under the "community caretaker doctrine" do not require particularized suspicion.

¶9     The District Court held a hearing in August 2008 and issued its Order in September 2008, holding that, upon noticing an inhabited (as opposed to abandoned) vehicle on the shoulder of a remote section of an interstate highway at dusk, Winburn had a duty to perform a welfare check.  Upon performing such a check, the officer observed signs of intoxication which provided him the requisite particularized suspicion to initiate an investigative stop.  The court therefore denied Doyle's motion to suppress.

¶10    On appeal, Doyle maintains that Winburn did not have particularized suspicion and the community caretaker doctrine does not apply.  Relying on *State v. Graham*, 2007 MT 358, ¶ 25, 340 Mont. 366, 175 P.3d 885, Doyle argues that the community caretaker doctrine "is operative where a police officer makes contact with a citizen not to investigate a crime, but rather to 'investigate a potential vehicle accident, or otherwise ensure the safety of citizens.' "  She argues that she and Browning were not trying to "flag down" a passing motorist and did not have the car hood up or the emergency flashers on, and that the car was not smoking; therefore, there was no overt distress that warranted Winburn's stopping.  In the absence of these factors, Doyle submits that the circumstances of her case do not meet the three-prong "community caretaker" test set forth in *State v. Lovegren*, 2002 MT 153, 310 Mont. 358, 51 P.3d 471.  Because there

was no justification to conduct a welfare check or particularized suspicion to perform an investigative stop, the District Court erred in denying her motion to suppress and dismiss.

¶11 Relying on *Lovegren* and *State v. Seaman*, 2005 MT 307, 329 Mont. 429, 124 P.3d 1137, the State responds that, given the facts listed in ¶ 4 above, Winburn justifiably stopped to check on the safety of Browning and Doyle. Citing *Seaman*, ¶¶ 27-28, the State maintains that the absence of signs of overt distress does not necessarily terminate an officer's duty to a motorist. Moreover, in this case Winburn observed Browning moving slowly and uncertainly around the car in an unsteady manner. Opining that such movement could have been the result of physical or mental impairment, illness or a medical emergency, the State claims that it was the officer's duty to determine whether Browning and Doyle required assistance.

¶12 In *Lovegren*, ¶ 25, we stated:

> [W]e adopt the following test in relation to the community caretaker doctrine. First, as long as there are objective, specific and articulable facts from which an experienced officer would suspect that a citizen is in need of help or is in peril, then that officer has the right to stop and investigate. Second, if the citizen is in need of aid, then the officer may take appropriate action to render assistance or mitigate the peril. Third, once, however, the officer is assured that the citizen is not in peril or is no longer in need of assistance or that the peril has been mitigated, then any actions beyond that constitute a seizure implicating not only the protections provided by the Fourth Amendment, but more importantly, those greater guarantees afforded under Article II, Sections 10 and 11 of the Montana Constitution as interpreted in this Court's decisions.

¶13 In the case before us, Winburn had justification under the first prong of the *Lovegren* test, and a duty as a public servant to stop and determine whether Browning and Doyle needed assistance. Doyle's car was parked on a narrow shoulder of interstate

5

highway in a remote area at dusk on a winter night and Browning was outside the vehicle walking unsteadily around the car to the driver's side of the vehicle near the traffic lane. Upon assuring himself that neither Browning nor Doyle was in peril, the officer's observations of intoxication then gave him "a particularized suspicion to make a further investigatory stop—i.e., the field sobriety tests—which eventually developed into probable cause for an arrest." *Lovegren*, ¶ 27.

¶14 It is appropriate to decide this case pursuant to Section I, Paragraph 3(d) of our 1996 Internal Operating Rules, as amended in 2006, which provides for memorandum opinions. It is manifest on the face of the briefs and the record before us that the appeal is without merit because the findings of fact are supported by substantial evidence and the legal issues are clearly controlled by settled Montana law which the District Court correctly interpreted. We therefore affirm.

/S/ PATRICIA O. COTTER

We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ JIM RICE